## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CAJUN GLOBAL LLC,** | ) | |
| **d/b/a CHURCH'S CHICKEN** | ) | |
| **and CAJUN FUNDING CORP.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **v.** | ) | _____ |
| | ) | |
| **GHESANI ENTERPRISES, INC.,** | ) | |
| **MUSHTAQ A. GHESANI, and** | ) | |
| **ROZMIN M. GHESANI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

Plaintiffs Cajun Global LLC d/b/a Church's Chicken ("Global") and Cajun Funding Corp. ("Funding") (collectively, "Plaintiffs") bring this Verified Complaint for Damages and Injunctive Relief against Defendants Ghesani Enterprises, Inc. ("GSI") and Mushtaz A. Ghesani ("Mr. Ghesani"), Rozmin M. Ghesani ("Ms. Ghesani") (collectively, "Defendants"), and state as follows:

1.

Plaintiff Global operates and franchises quick service Church's Chicken® restaurants ("Church's Chicken® Restaurants") throughout the United States.

Beginning in 2008, Cajun Operating Company, predecessor in interest to Global, entered into a series of franchise agreements with GSI for GSI to operate several Church's Chicken® Restaurants across Georgia and Alabama.  Mr. Ghesani and Ms. Ghesani (GSI's co-presidents) each executed a guaranty individually and personally guaranteeing GSI's obligations to Global under the franchise agreements.

2.

This is an action to collect amounts due to Global from Defendants pursuant to the franchise agreements and guaranties as a result of: (a) Defendants' failure to pay amounts owed under these agreements for two of GSI's Church's Chicken® Restaurants; and (b) GSI's unauthorized early closure of two of its Church's Chicken® Restaurants.[1] This action also seeks to enjoin Defendants from willfully and unlawfully using Plaintiffs' goodwill and reputation as a result of Defendants' pirating Funding's registered trademarks and service marks (the "Church's Chicken Marks").  Further, Funding seeks damages from Defendants for their

---

[1] As explained in more detail *infra*, Defendants also owe Global damages in connection with the early closure and failure to pay amounts owed pursuant to a third franchise agreement (the Jonesboro Franchise Agreement).  However, the Jonesboro Franchise Agreement requires that the parties mediate prior to initiating a civil claim for damages.  As a result, Global's contractual claim for damages against Defendants is not yet ripe as it relates to the Jonesboro Franchise Agreement.

unauthorized use of the Church's Chicken Marks.

3.

All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## THE PARTIES

4.

Plaintiff Global is a Delaware limited liability company with its principal place of business, corporate headquarters, and member all located in Atlanta, Georgia.

5.

Plaintiff Funding is a Delaware corporation with its principal place of business and corporate headquarters located in Atlanta, Georgia.  Plaintiff Funding owns the Church's Chicken Marks.  Funding granted Global the exclusive right to use and sublicense the Church's Chicken Marks in connection with the franchising of Church's Chicken Restaurants by Global.

6.

Defendant GSI is a Georgia corporation with its principal place of business in Georgia. GSI can be served with process through its registered agent, Rozmin

Ghesani, at 3852 Hampton Crest Lane, Kennesaw, Georgia 30152.

7.

Defendant Mushtaz A. Ghesani is a citizen and resident of the State of Georgia.  Mr. Ghesani can be served with process at 3852 Hampton Crest Lane, Kennesaw, Georgia 30152.

8.

Defendant Rozmin M. Ghesani is a citizen and resident of the State of Georgia.  Ms. Ghesani can be served with process at 3852 Hampton Crest Lane, Kennesaw, Georgia 30152.

## JURISDICTION AND VENUE

9.

This Court has subject matter jurisdiction over this action based upon:

(a)     Section 39 of the Lanham Act, 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331, 1337 and 1338 (a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and

(b)     28 U.S.C. § 1338(b) and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants'

common law unfair competition and Defendants' breaches of written

contracts and other related causes of action.

10.

The exercise of personal jurisdiction over Defendants is proper based on

Defendants' residency in Georgia.  Personal jurisdiction is also proper based upon

the agreement of the parties in the franchise agreements and guaranties.

11.

Venue is proper in this Court pursuant to:

(a)    28 U.S.C. §1391(b)(1) and (2); and

(b)    the forum selection clauses agreed to by the parties in the franchise

        agreements and guaranties.

## THE UNDERLYING AGREEMENTS

12.

Cajun Operating Company, predecessor in interest to Plaintiff Global,

entered into the following agreements with GSI:

(1)    a Franchise Agreement dated May 30, 2008 for the Church's Chicken

        system (the "Church's Chicken System") and for GSI to open and

        continuously operate a Church's Chicken® Restaurant at 8053 Tara

Boulevard, Jonesboro, Georgia 30246 (the "Jonesboro Franchise Agreement"). A true and correct copy of the Jonesboro Franchise Agreement is attached hereto as Exhibit A;

(2)   a Franchise Agreement dated November 3, 2010, as amended by that First Amended to Franchise Agreement of the same date, for the Church's Chicken System and for GSI to open and continuously operate a Church's Chicken® Restaurant at 1200 Columbus Parkway, Opelika, Alabama 36801 (the "Opelika Franchise Agreement"). A true and correct copy of the Opelika Franchise Agreement is attached hereto as Exhibit B; and

(3)   a Franchise Agreement on November 3, 2010, as amended by that First Amendment to Franchise Agreement of the same date, for the Church's Chicken System and for GSI to open and continuously operate a Church's Chicken® Restaurant at 1819 Roanoke Road, LaGrange, Georgia 30240 (the "LaGrange Franchise Agreement"). A true and correct copy of the LaGrange Franchise Agreement is attached hereto as Exhibit C.

Each of the forgoing agreements referenced in subparts (1) – (3) of this Paragraph are collectively referred to in this Complaint as the "Franchise Agreements." The

Church's Chicken® Restaurants that are the subjects of the Franchise Agreements are collectively referred to in this Complaint as the "Restaurants."

13.

On May 30, 2008, Global entered into a Guaranty Agreement with Mr. Ghesani and Ms. Ghesani whereby Mr. and Ms. Ghesani each individually, personally and unconditionally guaranteed to Global the performance of each and every obligation of GSI to Global under the Jonesboro Franchise Agreement (the "Jonesboro Guaranty").  A true and correct copy of the Jonesboro Guaranty is attached hereto as Exhibit D.

14.

On November 30, 2010, Global entered into a Guaranty Agreement with Mr. Ghesani and Ms. Ghesani whereby Mr. and Ms. Ghesani each individually, personally and unconditionally guaranteed to Global the performance of each and every obligation of GSI to Global under the Opelika Franchise Agreement (the "Opelika Guaranty").  A true and correct copy of the Opelika Guaranty is attached hereto as Exhibit E.

15.

On November 30, 2010, Global entered into a Guaranty Agreement with Mr. Ghesani and Ms. Ghesani whereby Mr. and Ms. Ghesani each individually,

personally and unconditionally guaranteed to Global the performance of each and every obligation of GSI to Global under the LaGrange Franchise Agreement (the "LaGrange Guaranty"). A true and correct copy of the LaGrange Guaranty is attached hereto as Exhibit F. The Jonesboro Guaranty, Opelika Guaranty and LaGrange Guaranty shall be collectively referred to herein after as the "Guaranties."

16.

Upon demand from Global, the Guaranties further obligate Mr. and Ms. Ghesani to render any payment or performance owed by GSI to Global.

17.

Further, on August 29, 2014, GSI (and Mr. and Ms. Ghesani as personal guarantors) gave Global a Promissory Note in the amount of $30,000.00, stemming from amounts owed to Global as a result of GSI's early closure of another Church's Chicken Restaurant (Unit 814) which is not directly the subject of this litigation. A true and correct copy of August 29, 2014 Promissory Note (the "Note") is attached hereto as Exhibit G and incorporated herein by reference.

18.

Pursuant to the terms of the Note, in the event GSI defaults on one of its Franchise Agreements, Global may declare immediately due and payable the entire

balance of the Note.

## GSI'S OBLIGATIONS
## UNDER THE FRANCHISE AGREEMENTS

19.

GSI is obligated by the terms of the Franchise Agreements to make monthly payments to Global for royalties, advertising, and other fees in connection with the operation of the Restaurants.  Specifically, the Franchise Agreements require GSI to pay Global a royalty of 5% of gross sales of the Restaurants for the preceding week in return for the use of the Church's Chicken System and Church's Marks. All such payments are due and payable to Global in Atlanta, Georgia.

20.

The Franchise Agreements further obligate GSI to continuously operate the Restaurants.  If GSI unilaterally fails to continuously operate a Restaurant for more than five consecutive days, the Franchise Agreements permit Global to terminate the Agreements and require GSI to immediately pay Global all sums due and owing under the Franchise Agreements.

21.

The Jonesboro Franchise Agreement between Global and GSI provides for an initial term beginning on May 30, 2008 and expiring on May 30, 2028.

22.

The Opelika Franchise Agreement between Global and GSI provides for an initial term beginning on November 3, 2010 and expiring on June 8, 2026.

23.

The LaGrange Franchise Agreement between Global and GSI provides for an initial term beginning on November 3, 2010 and expiring on June 8, 2026.

24.

The Jonesboro Franchise Agreement requires that the parties mediate their dispute prior to filing any complaint for damages.  However, the Jonesboro Franchise Agreement permits the parties to immediately seek injunctive relief where appropriate, without first resorting to mediation.

## THE CHURCH'S CHICKEN MARKS

25.

To identify the source, origin and sponsorship of Global's products and services, Global has employed and caused the Church's Chicken Marks to be used throughout the United States.  Global and its franchisees have spent hundreds of millions of dollars advertising and promoting the Church's Chicken Restaurants, services and products. This extensive advertising and marketing of the Church's

Chicken products and restaurant services under the Church's Chicken Marks has had a dramatic impact upon the public, creating widespread recognition and good will.

26.

As a result of such expenditures and efforts by Global and its franchisees, valuable good will has been developed for the Church's Chicken Marks and for the Church's Chicken Restaurants, products and services which bear the Church's Chicken Marks, and thus, identify Global as their sponsor or source.

27.

Funding owns the registrations for the Church's Chicken Marks. Funding granted Global the exclusive right to use and sublicense the Church's Chicken Marks in connection with the franchising of Church's Chicken Restaurants by Global. Pursuant to Church's Chicken franchise agreements between Global and their franchisees, Global grants its franchisees a limited license and authority to use and display the Church's Chicken Marks, but only in such manner, and at such locations and times, as are expressly authorized by Global. In no event is a franchisee authorized to use the Church's Chicken Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all Church's Chicken franchise agreements, including the Franchise

Agreements at issue in this case.

28.

Set forth below is an abbreviated listing of the Church's Chicken Marks registered in the United States Patent and Trademark Office, all of which continue to be used by Defendants:

| TRADEMARK | REGISTRATION NUMBER | REGISTRATION DATE |
|---|---|---|
| **CHURCH'S CHICKEN** | 3519711 | 10/21/08 |
| **CHURCH'S CHICKEN Since 1952 & Design** | 2721849 | 6/3/03 |
| **CHURCH'S CHICKEN Since 1952** | 3653765 | 7/14/09 |

29.

Plaintiffs comply with all legal requirements to ensure that Funding retains its exclusive rights with respect to the Church's Chicken Marks.  Under Funding's license agreement with Global, Funding has the right and obligation to protect and defend the Church's Chicken Marks and Global has the duty to notify Funding of any infringement.

30.

In addition to complying with all legal requirements, Plaintiffs take all reasonable precautions to ensure that Funding retains its exclusive rights with respect to the Church's Chicken Marks and to prevent their unauthorized use.  For example, Global educates its franchisees and employees as to the importance of the Church's Chicken Marks and instructs them with regard to the proper use of the Church's Chicken Marks.

31.

Global also instructs its employees to "police" the Church's Chicken Marks; that is, to look for unauthorized use of the Church's Chicken Marks in the business community and report any such use to Global.  Additionally, under the terms of their Church's Chicken franchise agreements, Global's franchisees are required to notify Global of any infringement or imitation of the Church's Chicken Marks that comes to their attention.

32.

The registrations of the Church's Chicken Marks are currently in full force and effect, and Funding has given notice to the public of the registration of the Church's Chicken Marks as provided in 15 U.S.C. § 1111.

33.

Global's products bearing the Church's Chicken Marks are offered and sold in interstate commerce.

## DEFENDANTS' DEFAULTS UNDER THE
## FRANCHISE AGREEMENTS AND GUARANTIES

34.

On or about June 13, 2015, GSI unilaterally ceased operations at the Jonesboro Restaurant for more than five consecutive days, which constitutes a breach of Jonesboro Franchise Agreement and provides Global with the immediate right to terminate the Jonesboro Franchise Agreement upon notice to GSI (without any opportunity to cure). GSI closed the Jonesboro Restaurant approximately 13 years prior to the end of the term of the Jonesboro Franchise Agreement.

35.

On or about June 19, 2015, GSI unilaterally ceased operations at the Opelika Restaurant for more than five consecutive days, which constitutes a breach of the Opelika Franchise Agreement and provides Global with the right to immediately terminate the Opelika Franchise Agreement upon notice to GSI (without any opportunity to cure). GSI closed the Opelika Restaurant approximately 11 years prior to the end of the term of the Opelika Franchise Agreement.

36.

On or about June 19, 2015, GSI unilaterally ceased operations at the LaGrange Restaurant for more than five consecutive days, which constitutes a breach of the LaGrange Franchise Agreement and provides Global with the right to immediately terminate the LaGrange Franchise Agreement upon notice to GSI (without any opportunity to cure).  GSI closed the LaGrange Restaurant approximately 11 years prior to the end of the term of the LaGrange Franchise Agreement.

37.

As a result of the foregoing, and in accordance with the Franchise Agreements, Global sent a letter to Defendants on July 2, 2015, notifying them of the amounts owed under the Franchise Agreements and terminating the Franchise Agreements (the "Termination Letter").  A true and correct copy of the Termination Letter is attached hereto as Exhibit H and incorporated herein by reference.

38.

Specifically, the Termination Letter notified Defendants that termination of the Franchise Agreements (due to Defendants' early closure of the Restaurants) resulted in an obligation by GSI to pay future royalties to Global in the amount of

$175,757.77 under the Opelika Franchise Agreement, $80,913.00 under the LaGrange Franchise Agreement and $373,098.97 under the Jonesboro Franchise Agreement. In addition, the Termination Letter demanded that GSI immediately pay $9,663.92 in past due royalties and advertising fees owed under the Franchise Agreements.

39.

In accordance with the terms of the Note, the Termination Letter also declared immediately due and payable $25,625.00, representing the outstanding balance on the Note.

## GSI'S OBLIGATIONS UPON
## TERMINATION OF THE FRANCHISE AGREEMENTS

40.

Upon termination of the Franchise Agreements, GSI is required to:

(1) immediately pay Global and its affiliates all sums due and owing Global or its affiliates pursuant to the Agreements;

(2) promptly return to Global the Manual, any copies of the Manual, the training kit (if applicable), and all other materials and information furnished by Global, including the return in good condition and repair all computer software, disks, and other electronic storage media;

(3)     continue to abide by the covenants contained in Section 19 of the

Franchise Agreements and to not take any action that violates the

covenants;

(4)     discontinue all use of the Church's Chicken Marks in connection with

the Restaurants and any and all items bearing the Marks; remove the

Marks from the Restaurants and from clothing, signs, materials, motor

vehicles, and other items owned or used by GSI in the operation of the

Restaurants; cancel all advertising for the Restaurants that contains

the Marks; and take such action as may be necessary to cancel any

filings or registrations for the Restaurants that contain any Marks;

(5)     make such alterations and modifications to the Restaurants as may be

necessary to clearly distinguish to the public the Restaurants from

their former appearance and also make specific additional changes as

Global may request for that purpose, at GSI's expense; and

(6)     furnish to Global (within 30 days after the effective date of

termination) evidence satisfactory to Global of GSI's compliance with

the above-listed obligations.

The obligations set forth in subparts (1) – (6) of this Paragraph shall be collectively

referred to in this Complaint as the "Post-Termination Obligations."

41.

By agreeing to these terms, upon termination of Franchise Agreements, GSI specifically agreed to immediately cease operating its restaurants as Church's Chicken Restaurants and to desist from all use of the Church's Chicken Marks and trade dress.

42.

Upon termination of the Franchise Agreements, GSI has no right to use or display the Church's Chicken Marks and no right to operate using the Church's Chicken System.

43.

The Franchise Agreements further prohibit GSI (upon termination of the Franchise Agreements) from using any of Plaintiffs' trade secrets and promotional materials, or any mark confusingly similar to the Church's Chicken Marks.

44.

The Termination Letter demanded that Defendants immediately bring themselves into compliance with the Post-Termination Obligations of the Franchise Agreements, including (without limitation) the obligations to: 1) immediately pay Global all sums due and owing to Global pursuant to the Franchise Agreement; 2) immediately cease use of all Church's Chicken Marks

and other confidential and proprietary information; 3) return the Manual and all

other confidential materials related to the operation of the franchised business to

Global; 4) promptly make such alternations and modifications to the Restaurants as

may be necessary to clearly distinguish to the public the Restaurants from their

former appearance; and 5) furnish to Global within thirty (30) days, evidence of

compliance with these post-termination obligations.  (*See* Termination Letter, Ex.

H.)

### GSI'S INFRINGEMENT AND REFUSAL TO COMPLY WITH POST-TERMINATION COVENANTS OF THE FRANCHISE AGREEMENTS

45.

Notwithstanding the termination of the Franchise Agreements and

Defendants' receipt of the Termination Letter, GSI  has failed to remove from

these Restaurants many of the Church's Chicken signs and all other items which

bear or display the Church's Chicken Marks, name, symbols or slogans.

46.

GSI's failure to comply with the post-termination covenants is likely to

confuse the public.  As a result, the potential damage to Global's goodwill and

reputation is incalculable, and the potential harm to Global is irreparable.

**DAMAGES**

47.

Under the terms of the Franchise Agreements and the Guaranties,
Defendants are obligated to pay Global a royalty of 5% of gross sales for the
preceding week for each of its Restaurants in return for the use of the Church's
Chicken System and Church's Marks.

48.

Further, under the terms of the Franchise Agreements, the Guaranties, and
Georgia law, Defendants are also obligated to pay future royalty amounts as a
result of Defendants' breach of the Agreements and Guaranties for unilaterally
ceasing to continuously operate the Restaurants.

49.

Defendants agreed in writing that if Global utilizes legal counsel in
connection with any failure by Defendants to comply with the Franchise
Agreements or Guaranties, Defendants shall reimburse Global for all expenses
incurred, including (but not limited to) attorneys' fees.  The parties agreed that the
Court and not a jury would determine these amounts.

50.

Defendants also agreed that, in any litigation to enforce the terms of the

agreements between Global and Defendants, Global, as the prevailing party, shall be paid by Defendants all costs and expenses, including attorneys' fees, incurred as a result.

51.

The Termination Letter demanded that Defendants immediately pay $408,387.89 for past due royalties and advertising fees, future royalties and the Note balance.

52.

Despite Defendants' obligations under the Franchise Agreements, the Guaranties, and the Note, and despite Defendants' receipt of the Termination Letter, Defendants have failed and refused to pay the damages due and owing to Global.

53.

Defendants are indebted to Global for all monetary damages, including without limitation royalty fees, advertising contributions, future royalty fees, the Note balance, and legal fees incurred by Global as a result of Defendants' breaches.

54.

Plaintiffs have engaged undersigned counsel and have agreed to pay counsel

reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between the parties.

55.

Global in no way breached the Franchise Agreements, and Global has fulfilled each and every obligation it had pursuant to the Franchise Agreement.

56.

In accordance with the terms of the Jonesboro Franchise Agreement, Global is demanding mediation with Defendants in an effort to resolve the amounts owed by Defendants to Global under the Jonesboro Franchise Agreement.

57.

The mediation requirement of the Jonesboro Franchise Agreement does not extend to injunctive relief sought by Global.  Global reserves the right to amend this Complaint and seek additional monetary damages owed by Defendants in the event the parties are unable to successfully mediate and resolve the amounts owed under the Jonesboro Franchise Agreement.

## COUNT I
## BREACH OF OPELIKA AND LAGRANGE FRANCHISE AGREEMENTS
### (UNAUTHORIZED CLOSURE AND FAILURE TO PAY DAMAGES)

58.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

59.

On or about June 19, 2015, GSI unilaterally ceased operations at the Opelika and LaGrange Restaurants for more than five consecutive days.  This is a breach of the Opelika and LaGrange Franchise Agreements provides Global with the immediate right to terminate the Opelika and LaGrange Franchise Agreements upon notice to GSI (without any opportunity to cure).

60.

On July 2, 2015, Global gave Defendants notice that the Opelika and LaGrange Franchise Agreements terminated (without opportunity for GSI to cure) because GSI ceased operations at these Restaurants in violation of the terms of the Opelika and LaGrange Franchise Agreements.

61.

GSI's unauthorized early closure of the Opelika and LaGrange Restaurants

represent breaches of the Opelika and LaGrange Franchise Agreements.

62.

The forgoing breaches have directly and proximately caused loss and damage to Global.

63.

Through the Termination Letter, Global demanded that GSI immediately pay future royalties in the amount of $175,757.77 under the Opelika Franchise Agreement and $80,913.00 under the LaGrange Franchise Agreement as a result of the early closures.  In addition, the Termination Letter demanded that GSI immediately pay $6,386.82 in past due royalties and advertising fees owed under the Opelika and LaGrange Franchise Agreements.

64.

Despite GSI's obligations under the Opelika and LaGrange Franchise Agreements, and despite GSI's receipt of the Termination Letter, GSI has failed and refused to pay the damages due and owing to Global.

65.

GSI's failure to pay Global as obligated is a breach of the Opelika and LaGrange Franchise Agreements.

66.

The forgoing breach has directly and proximately caused loss and damage to Global.

67.

GSI owes Global $263,057.59 exclusive of legal fees, which is now past due and owing pursuant to the Opelika and LaGrange Franchise Agreements.

**COUNT II**
**BREACH OF PROMISSORY NOTE**
**(FAILURE TO PAY AMOUNTS OWED)**

68.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

69.

Through the Termination Letter and as a result of the GSI's defaults under the Franchise Agreemetns, Global demanded that GSI immediately pay $25,625.00, representing the outstanding balance on the Note.

70.

Despite GSI's obligations under the Note, and despite GSI's receipt of the Termination Letter, GSI has failed and refused to pay the damages due and owing

-25-

to Global.

71.

GSI's failure to pay Global as obligated is a breach of the Note.

72.

The forgoing breach has directly and proximately caused loss and damage to Global.

73.

GSI owes Global  $25,625.00, exclusive of legal fees, which is now past due and owing pursuant to the Note.

**COUNT III**
**BREACH OF OPELIKA AND LAGRANGE FRANCHISE AGREEMENTS**
**(CONFIDENTIALITY AND TRADE SECRETS)**

74.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

75.

The confidentiality provisions of the Opelika and LaGrange Franchise Agreements serve to protect Global's legitimate business interests, including, but not limited to, its trade secrets, confidential business information and its good will and substantial relationships with its franchisees and customers and are reasonably

-26-

necessary to protect Global's legitimate business interests.

76.

GSI has not returned the confidential Manual, recipe books, and kitchen recipe signs for the Opelika and LaGrange Restaurants to Global, as required by those Franchise Agreements.

77.

GSI's actions constitute breaches of the confidentiality provisions of the Opelika and LaGrange Franchise Agreements.

78.

These breaches have directly and proximately caused loss and damage to Global in an amount to be determined at trial.

**COUNT IV**
**BREACH OF OPELIKA AND LAGRANGE FRANCHISE AGREEMENTS**
**(POST TERMINATION OBLIGATIONS)**

79.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

80.

Defendants' refusal to comply with the post-termination covenants of the Opelika and LaGrange Franchise Agreements is a breach of those Franchise

Agreements and has directly and proximately caused loss and damage to Global.

## COUNT V
## BREACH OF OPELIKA AND LAGRANGE GUARANTIES

81.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

82.

Pursuant to the Opelika and LaGrange Guaranties, Mr. and Ms. Ghesani unconditionally and personally guaranteed to Global the performance of each and every obligation of GSI under the Opelika and LaGrange Franchise Agreements.

83.

As a result, Mr. and Ms. Ghesani are obligated to pay Global future royalties in the amount of $175,757.77 under the Opelika Franchise Agreement and $80,913.00 under the LaGrange Franchise Agreement as a result of the early closures.  In addition, Mr. and Ms. Ghesani are obligated to immediately pay $6,386.82 in past due royalties and advertising fees owed under the Opelika and LaGrange Franchise Agreements.

84.

Likewise, Mr. and Ms. Ghesani also owe Global for all damages Global has

suffered as a result of GSI's breach of the confidentiality provisions and post-termination covenants of the Opelika and LaGrange Franchise Agreements.

85.

Therefore, Mr. and Ms. Ghesani owe Global an amount not less than $263,057.59 (exclusive of legal fees) which is now past due and owing.

## COUNT VI
## ATTORNEYS' FEES

86.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

87.

The Opelika and LaGrange Franchise Agreements provide that if Global utilizes legal counsel in connection with any failure by Defendants to comply with the Opelika or LaGrange Franchise Agreements or Guaranties, Defendants shall reimburse Global for all expenses incurred, including (but not limited to) attorneys' fees. The parties agreed that the Court and not a jury would determine these amounts.

88.

The Opelika and LaGrange Franchise Agreements and Guaranties provide that the prevailing party is entitled to its attorneys' fees and costs. Pursuant to

those provisions and O.C.G.A. § 13-1-11, Global hereby demands that Defendants reimburse it for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

89.

In addition, Defendants have acted in bad faith, caused unnecessary expense and delay, and been stubbornly litigious.  As such, Plaintiffs are entitled to their reasonable attorneys' fees incurred in this litigation pursuant to O.C.G.A. § 13-6-11.

## COUNT VII
## VIOLATION OF LANHAM ACT

90.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

91.

Defendants' acts constitute infringements of Funding's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT VIII
## COMMON LAW TRADEMARK INFRINGEMENT

92.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

93.

Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

## COUNT IX
## VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTES ACT

94.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

95.

Defendants have misappropriated Global's confidential and proprietary business information, including recipes, methods and systems contained in the Manual by failing to return items after the franchise relationship between the parties ended.

96.

Such actions cause a likelihood of confusion and misunderstanding as to

Defendants' affiliation, connection and association with Global, which no longer exists.

97.

The foregoing conduct is unlawful, unethical and deceitful.

98.

Defendants' actions constitute a violation of Georgia's Uniform Deceptive Trade Practices Act.

99.

These actions have directly and proximately caused loss and damage to Plaintiffs.

**COUNT X**
**INJUNCTION AND TEMPORARY RESTRAINING ORDER**

100.

Plaintiffs incorporate and re-allege the foregoing paragraphs as if fully set forth herein.

101.

Defendants continue to use the trademarks and other confidential and proprietary information of Plaintiffs at the Restaurants.

102.

Defendants' actions are resulting in irreparable harm to Plaintiffs, making

-32-

money damages inadequate.

103.

Plaintiffs will prevail on their claims due to Defendants' trademark infringement and violations of Franchise Agreements.

104.

As a result, Defendants should be immediately enjoined and restrained from the use of all trademarks, confidential and other propriety information of Plaintiffs at the Restaurants, and ordered to de-identify with Plaintiffs at these locations, return the Manual and all other confidential materials to Plaintiffs, and promptly make such alterations and modifications to the Restaurants as may be necessary to clearly distinguish to the public these restaurants from their former appearance.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

(1) For temporary restraining orders and/or preliminary and permanent injunctions enjoining Defendants and all persons acting on their behalf, in concert with, or under his control, from:

    (a) manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Church's Chicken Marks, or any colorable imitation thereof at the Restaurants;

-33-

(b)     displaying or using any of the Church's Chicken Marks to advertise or promote the sale of, or to identify, the Restaurants, or any product or service provided therein; and

(c)     making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Restaurants, and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Plaintiffs.

(2)     For temporary restraining orders and/or preliminary and permanent injunctions directing Defendants and all persons acting on Defendants' behalf, in concert with Defendants, or under Defendants' control, to:

(a)     recall and deliver up to Plaintiffs all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the Church's Chicken Marks, or any colorable imitation of the Church's Chicken Marks from the Restaurants;

(b)     recall and deliver up to Plaintiffs all copies and editions of the Manual that are in Defendants' actual or constructive, direct or indirect,

possession, custody or control at the Restaurants, including all

supplements and addenda thereto, and all other materials containing

restaurant operating instructions, restaurant business practices, or

plans of Plaintiffs;

(c)     allow Plaintiffs, at a reasonable time, to enter the premises of the

Restaurants and make whatever changes, including removal of

tangible assets, that are necessary to distinguish the premises from

their appearance as a Church's Chicken Restaurant;

(d)     account and pay over to Plaintiffs all gains, profits, and advantages

derived by Defendants at the Restaurants from any trademark and

service mark infringement, breach of contract, and unfair competition

to the full extent provided for by Section 35 of the Lanham Act, 15

U.S.C. §1117 and by the controlling principles of common law; and

(e)     unlawfully using or disclosing Plaintiffs' confidential information,

including confidential business information and trade secrets, Manual,

recipes, product specifications, information, techniques and know-

how.

(3)     For money damages, plus three times additional actual damages Plaintiffs

have sustained by reason of Defendants' trademark and service mark

infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

(4)     For punitive damages because of the willful nature of Defendants' actions;

(5)     For pre-judgment interest and Plaintiffs' reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Opelika and LaGrange Franchise Agreements and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

(6)     For compensatory damages and attorneys' fees against Defendants due to their breaches of contracts in an amount not less than $288,662.59;

(7)     For money damages, including treble damages for violations of Georgia's Uniform Deceptive Trade Practices Act;

(8)     For an order directing Defendants to file with the Court, and to serve on Plaintiffs' counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

(9)     For all costs, disbursements, and expenses of this action; and

(10)    For all such other relief as this Court may deem just and proper.

Respectfully submitted this 3rd day of July, 2015.

SLOTKIN & CAIOLA, LLC


/s/ Anne P. Caiola
Anne P. Caiola
Georgia Bar No. 142639
annie@slotkincaiola.com
F. Robert Slotkin
Georgia Bar No. 653001
bobby@slotkincaiola.com
Elizabeth B. Rose
Georgia Bar No. 558747
elizabeth@slotkincaiola.com

*Attorneys for Plaintiffs*

118 E. Maple Street
Decatur, GA 30030
404-228-4099 phone
404-228-4610 fax

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CAJUN GLOBAL LLC,**<br>**d/b/a CHURCH'S CHICKEN**<br>**and CAJUN FUNDING CORP.,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| **v.** | ) ) | _____ |
| **GHESANI ENTERPRISES, INC.,**<br>**MUSHTAQ A. GHESANI, and**<br>**ROZMIN M. GHESANI,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## <u>VERIFICATION</u>

The undersigned officer or agent for Cajun Global Company d/b/a Church's Chicken hereby verifies under penalty of perjury that upon her knowledge and belief, the within and foregoing allegations in the Verified Complaint for Damages and Injunctive Relief are true and correct.

Executed on July 3 , 2015.

Cajun Global Company
d/b/a Church's Chicken

_Jillian Suwanski_
_____
BY:   Jillian M. Suwanski
Its: Senior Director, Associate General
Counsel and Assistant Secretary

*A notary is not required pursuant to 28 U.S.C. § 1746.*

-38-

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| CAJUN GLOBAL LLC,<br>d/b/a CHURCH'S CHICKEN<br>and CAJUN FUNDING CORP.,<br><br>     Plaintiffs,<br><br>v.<br><br>GHESANI ENTERPRISES, INC.,<br>MUSHTAQ A. GHESANI, and<br>ROZMIN M. GHESANI,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE NO.<br><br>_____ |

## VERIFICATION

The undersigned officer or agent for Cajun Funding Corp. hereby verifies under penalty of perjury that upon her knowledge and belief, the within and foregoing allegations in the Verified Complaint for Damages and Injunctive Relief are true and correct.

Executed on July 3 , 2015.

Cajun Funding Corp

*Jillian M Suwanski*

BY:  Jillian M. Suwanski
Its: Senior Director and
Associate General Counsel and Secretary

*A notary is not required pursuant to 28 U.S.C. § 1746.*

-39-